NATIONAL RAILWAYS ADVERTISING COMPANY v. E. L. BRUCE COMPANY.

Opinion delivered April 5, 1920.

1. EVIDENCE—PAROL EVIDENCE TO EXPLAIN WRITING.—The words "at monthly payment basis" in an advertising contract for 12 months at a certain amount per month, advertiser having "privilege of cancellation at end of sixty days from beginning of installation of cards, at monthly payment basis," were ambiguous, and parol evidence was admissible to explain their meaning.

2. ALTERATION OF INSTRUMENT — MATERIALITY.—The unauthorized adding of the words "at monthly payment basis" to an advertising contract, by which the advertiser had the "privilege of cancellation at end of sixty days from beginning of installation of cards, at monthly payment basis," was a material alteration; the monthly payment basis being higher than the *pro rata* or long time rate.

3. ALTERATION OF INSTRUMENTS—EFFECT.—A material unauthorized alteration of an advertising contract by an advertising company absolved the advertiser from any obligations under it.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The alteration of the contract was immaterial and made no change in the legal operation of the instrument, and the court erred in holding that they were material and vitiated the instrument. The alteration must be material. 1 Crawford's Digest, 99; 115 Ark. 606; 170 S. W. 1011. The words added made no change in the legal operation of the instrument.

2. The contract was not canceled. 188 Fed. 179; 68 S. E. 124; 56 *Id.* 313. The privilege of cancellation given appellee was a mere option and could only be exercised at the time specified. 82 Ark. 573; 135 *Id.* 573.

3. Appellee waived the right to cancel. 45 Ark. 37; 57 *Id.* 632; 64 *Id.* 213; 75 *Id.* 41; 83 *Id.* 306; 90 *Id.* 439; 94 *Id.* 443.

4. The court erred in finding that the installation of service was not to begin until notice from appellee. It is a plain attempt by the parties to alter the written contract by parol evidence, which can not be done. 99 Ark. 400; 102 *Id.* 575; 105 *Id.* 50; 112 *Id.* 165; 113 *Id.* 509; 125 *Id.* 219. The position of the court below is utterly inconsistent.

5. The court erred in permitting Bruce to testify that the contract was conditional upon other contracts between appellee and its customers. The contract speaks for itself and is complete and binding and parol evidence was not admissible. *Supra.* It also erred in allowing Bruce to testify that a sum in excess of $200 was named as the short rate monthly payment basis in the negotiations and that it was the custom to have a short time rate different from the long time rate. All negotiations were merged in the written contract and the addition of the words were not material. Custom must yield to a positive contract. 2 Sumner, 567; 5 Chamberlayne, Mod. Law of Ev., 4964.

*Cockrill & Armistead,* for appellee.

1. It is plain that appellant altered the contract and it was material. The parol evidence was admissible to aid in the interpretation of a written instrument. 17 Cyc. 664; 62 Ark. 337; 81 *Id.* 389; 89 *Id.* 404; 27 *Id.* 510; 53 *Id.* 4.

2. The special meaning of words or terms used in commercial contracts may be shown. 105 Ark. 197; 106 *Id.* 400; 113 *Id.* 556. The giving of notice was properly proven by Bruce. The only measure of appellant's damage if the contract was wrongfully canceled, for a full or partial term, would be its actual loss, which could only be ascertained by letting the space to others and charging appellee with the difference. There was no error.

SMITH, J. On November 1, 1917, appellant and appellee entered into a contract, the parts of which material to the issues now before the court are as follows:

"This contract between National Railways Advertising Company (hereinafter called the company) and E. L. Bruce Company (hereinafter called the advertiser) witnesseth that the advertiser hereby authorizes and directs the National Railways Advertising Company to place his advertisement of flooring and other lumber merchandise (size of card 16x24 inches) in one-fourth cars of the Northwestern 'L' South Side 'L' for twelve months from November 15, 1917, for which the advertiser agrees to pay the sum of one hundred seventy-four and 24/100 dollars ($174.24) per month, payable at the end of each month, during the term of this contract. With privilege of cancellation at end of sixty days from beginning of installation of cards, at monthly payment basis."

The contract was on a printed form, and the last sentence quoted in the body of the contract was inserted in ink, the four final words having been written with a different pen and with different ink from those employed in filling out the remainder of the contract.

The court below held that these four words were written into the contract by the company's agent after its

signing, and that they were material and vitiated the instrument. The correctness of this holding presents the controlling question in the case.

It is the insistence of the company that the addition of the words, "at monthly payment basis," if they were added after the execution of the contract, could make no change in the legal operation of the instrument, and that the only time when the advertiser could exercise the privilege of cancellation was at the end of sixty days from the date of the installation of the cards, and at that time the advertiser would owe for two months' service, and would have to pay for these two months, whether the words, "at monthly payment basis," were inserted or not, and that the sum to be paid was not controlled by those words. We adopt the designation employed in the contract in referring to the parties.

It appears that the contract was executed on one of the company's printed forms; but the provision in regard to its cancellation was written with pen and ink. This writing provided, not only the length of time notice of cancellation should be given, but what the terms of payment should be, if that right were exercised. The stipulation that the payment, in the event of cancellation, should be made at the monthly payment basis seems to imply that there was some other basis of payment. The body of the contract provided for a monthly payment of $174.24, but that price was upon the assumption that the contract would continue in force for one year; and if there was no different price per month, if the contract was canceled before the end of the year, then the words, "at monthly payment basis," were meaningless, and nothing was accomplished by their insertion.

But the advertiser says they were not in the contract when it was signed, and the court below so found the fact to be. It is not to be assumed, therefore, that the words are without meaning. Upon the contrary, we think they make the contract sufficiently ambiguous to make parol testimony admissible to explain their meaning. *Elledge* v. *Henderson,* 142 Ark. 421; *Wilkes* v. *Stacy,* 113 Ark. 556.

The explanation offered by one Bruce, who represented the advertiser, and accepted by the court below, as is indicated by the findings of fact made, is that the parties had agreed that the advertising should not begin until notice to post the cards had been given by Bruce; but that in advance of such notice the company posted the cards in the cars, and that upon discovering this fact Bruce gave notice to the company to discontinue the advertisements after two months. It was then insisted on behalf of the company that verbal notice had been given to the company's solicitor to start the advertisements, and the company's representative stated that the company would accept as true and act upon its solicitor's statement in that respect. Thereupon the representative of the company, to whom the direction to discontinue the advertising was given over the telephone, stated, "Well, if you cancel in two months you will pay the long rate." Bruce denied that the advertiser was under any such obligation, but he was told to read the contract and see. Thereupon he examined the contract, and discovered that the words "at monthly payment basis" had been inserted after he had signed the contract. At the time he signed the contract he was told that the manager of the company, who would sign for the company, was not present, but that when the manager had signed the original and duplicate, the copy would be sent him, and that when the copy was received there was no notification of any alteration, and it was filed away without examination, and that he was then told that the payments which would be expected would be something over $200 per month; that he then stated that the alteration was unauthorized, and that he considered the advertiser absolved on that account, and directions were then given not to start the advertisements at all. The witness testified further that he was a member of the advertising committee of the Oak Flooring Manufacturers' Association, and was familiar with the custom of advertisers in that trade, and that it was the custom and practice in that business to have a short time rate, which is higher than the *pro rata*

or long time rate. This testimony was substantially denied by the company; but its representative, who negotiated the contract for it, testified that Bruce had read over the cancellation clause, and asked a great many questions about it, and that he told Bruce that the words, "at monthly payment basis," would have to be added after the cancellation clause.

Thereafter the company demanded payment from time to time, claiming to be performing the contract; but in each instance the advertiser replied that there was no contract. This continued from month to month until the year had expired, when this suit was brought for a year's advertising service under the contract.

We think the court properly admitted the testimony showing the meaning of the words, "at monthly payment basis." *Paepcke-Leicht Lumber Company* v. *Talley,* 106 Ark. 400; *Wilkes* v. *Stacy,* 113 Ark. 556; *Finn* v. *Culberhouse,* 105 Ark. 197. The effect of this testimony is to show that a material and unauthorized alteration had been made in the contract, thereby absolving the advertiser from any obligations under it. *Outcault Advertising Co.* v. *Young,* 110 Ark. 123.

The judgment of the court below is therefore affirmed.