### 45147.  PACIFIC INDEMNITY COMPANY v. BENSON.

PANNELL, Judge. The defendant insurer appeals from the denial of a summary judgment.

The plaintiff's allegations and testimony disclose without dispute that his home is built on a concrete slab, that the original water main is under the slab, and inaccessible without tearing out a portion of the slab. This main developed a leak, and the plaintiff, as a temporary measure, re-routed the supply through the attic, thus eliminating the leaky pipe from the system. He put heating coils on the pipe in the attic to avoid freezing. The system functions as well as the original except for "a small drop in water pressure due to a reduction in pipe size." Seepage from the leaky pipe accumulated in the cold air return of the heating system, but drained away without causing additional damage. He seeks $5,000 from his insurer under a homeowners policy for the cost of cutting into and repairing the slab, in order to replace the pipe as originally laid, plus damages for bad faith and attorney's fees.

The provisions of the policy on which the plaintiff relies, and under which the defendant insurer denies liability, are as follows:

"This policy insures . . . against direct loss . . . by the following perils as defined and limited herein: "15. Accidental discharge,

leakage or overflow of water or steam from within a plumbing, heating, or air conditioning system or domestic appliance, *including the cost of tearing out and replacing any part of the building[s] covered, required to effect repairs* to the system or appliance from which the water or steam escapes, *but excluding:* . . . (c) *loss to the system* or appliance from which the water or steam escapes."

The statement that the contract covers the cost of tearing out and replacing, if this expense is required to repair the lead, in our opinion, can only be construed to mean that necessary to repair the existing water system. Any and all ambiguities in an insurance contract shall be construed most favorably toward the insured and most strongly against the insurer. See *Sovereign Camp WOW v. Heflin,* 188 Ga. 234, 235 (3 SE2d 559); *Fokes v. Interstate Life &c. Ins. Co.,* 59 Ga. App. 680 (2 SE2d 170). The word "require" is ambiguous in that it has several definitions, including the following: "to need," "to ask," "to request," "to claim as by right," "to seek," "to ask for as a favor," "to make request." The definition which most strongly supports the insured's case will be adopted, and will govern this case.

The existing water system is one which runs under the slab. To say that a substitute water system is a repair is, in our opinion, illogical. In this case, the water system is a concealed system. The act of the plaintiff in re-routing the pipes to avoid further damage to the concrete slab upon which the house is built is not a repair of that system. The re-routing of water pipes through the garage into the attic and down to some connection with other parts of the system would be a temporary system only. This would not be a concealed system or repair to the concealed system, but would be an unconcealed substitute system. Under this interpretation, we see no way to grant the defendant's motion for summary judgment. To hold that this substitution is a repair would completely eliminate the protection given by paragraph 15 of the contract, and we would be re-writing the contract completely.

If the leak in the water system had been in one of the walls of the house and the plaintiff had cut off the water, cut the pipe below the leak, run the pipe out the window, up the outside

wall and then connected it above the leak through another window, we do not believe we should call this a repair, and we can see no difference in this set of facts and the set of facts shown here.

There is no contention that the insurance company must pay for the repair to the pipes under the house, because this is excluded. The insurance only pays the expense necessary in order to get to the burst pipes so as to repair the leak. We affirm the trial court.

*Judgment affirmed. Bell, C. J., Quillian, Whitman, and Evans, JJ., concur. Jordan, P. J., Hall, P. J., Eberhardt and Deen, JJ., dissent.*

ARGUED MARCH 3, 1970—DECIDED JUNE 23, 1970— REHEARING DENIED JULY 21, 1970—

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., Randall L. Hughes,* for appellant.

*Arnold, Cate & Allen, William H. Cate,* for appellee.

JORDAN, Presiding Judge, dissenting. If an insurance contract is unambiguous, it must be construed to mean what it says, including limitations on coverage. *State Farm Mut. Auto. Ins. Co. v. Sewell,* 223 Ga. 31 (153 SE2d 432); *Cherokee Credit Life Ins. Co. v. Baker,* 119 Ga. App. 579, 582 (168 SE2d 171).

In my opinion, there is no ambiguity in the contractual provisions here involved. The contract covers the *cost of tearing out and replacing* a portion of the slab or the building, *if this expense is required to repair the leak* in the plumbing system. The word "required" should be given its literal meaning, i.e., necessary or essential. It is obvious from the plaintiff's testimony that the system as actually repaired functions as well as the previous system, except for a slight drop in water pressure, and that an increase in the size of the pipe would restore the function to its original state, without any *required* expense of tearing out and replacing the slab or any part of the building.

There is no claim that the expense to the plaintiff, in effecting repairs to the system itself in the manner shown, exceeds the cost of repairing the system by replacing the pipe in its original loca-

tion, or that this additional expense, if any, should be borne by the insurer in lieu of the expense avoided by not cutting into the slab.

Under the terms of this contract, the action taken by the plaintiff in connection with the water system was simply not covered, and the trial court erred in denying the defendant's motion for summary judgment.

I am authorized to state that Presiding Judge Hall and Judges Eberhardt and Deen concur in this dissent.